UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ISIS JOHNSON,<br><br>      Plaintiff,<br>   v.<br>CORRECTION OFFICER PADIN,<br>CORRECTION OFFICER JOHN DOE 1,<br>CAPTAIN JOHN DOE 2,<br><br>      Defendants. | Case No. 3:20-cv-637 (CSH)<br><br>**AUGUST 16, 2020** |

### INITIAL REVIEW ORDER

**HAIGHT, Senior District Judge**

Plaintiff Isis Johnson,[1] who is currently incarcerated at the Garner Correctional Institution, filed a complaint *pro se* pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that Defendants Correction Officers Padin and John Doe 1, and Defendant Captain John Doe 2 discriminated against Plaintiff on the basis of her transgender identity and prevented Plaintiff from practicing her religious beliefs. Pursuant to 28 U.S.C. § 1915A, the Court now determines whether Plaintiff's Section 1983 claims may proceed.

. **STANDARD OF REVIEW**

A district court must review a prisoner civil complaint against governmental actors and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief

---

[1] According to the Connecticut DOC website, on November 26, 2018, Johnson received a forty-two month sentence. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (the Court may "take judicial notice of relevant matters of public record."), http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=381064.

may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1), (2).

A complaint is adequately pled if its allegations, accepted as true and liberally construed, could "conceivably give rise to a viable claim." *See Green v. Martin*, 224 F. Supp. 3d 154, 160 (D. Conn. 2016) (citing *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005)). Although highly detailed allegations are not required, the complaint must state a claim that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)); *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017). A complaint states a claim that is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

If a plaintiff is proceeding *pro se*, her complaint "must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 Fed. Appx. 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)); *see also Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers").

Despite being subject to liberal interpretation, a *pro se* complaint must still "state a claim to relief that is plausible on its face,"[2] and the court may not "invent factual allegations" that the plaintiff has not pleaded. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d 2010). A *pro se* complaint that contains "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," is not sufficient to state a viable claim. *See id.*

---

[2] *See Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

**FACTUAL ALLEGATIONS OF THE COMPLAINT**

The allegations of the complaint are recounted below in the light most favorable to Plaintiff.

Plaintiff Isis Johnson is currently incarcerated at the Garner Correctional Institution ("Garner") in Newtown, Connecticut. Johnson identifies as transgender. Doc. 1 at ¶ 1. Johnson is also a Protestant, and has previously filed a request with Connecticut Department of Correction to participate in all Protestant English services. *See id.* at 20 ("Request for Designation of Religion" Form).

On January 18, 2020, Johnson was afforded an opportunity to attend her brother's funeral. Doc. 1 at ¶ 1. Before her departure from the Garner facility, Correction Officers Padin and John Doe 1 conducted a strip search of Johnson. *Id.* at ¶ 2. During the strip search, Defendants confiscated Johnson's religious cross that she had purchased from the commissary. *Id.* at ¶3. Johnson questioned Defendants' actions and asked to see their supervisor, Defendant Captain John Doe 2. *Id.* at ¶ 4. Captain John Doe 2 informed Johnson that he approved of the officers' conduct. *Id.* at ¶ 5.

Defendants' conduct—confiscating Johnson's cross—caused Johnson to suffer mentally and emotionally because she could no longer express and practice her religious beliefs at her brother's funeral. *Id.* at ¶¶ 7–9. Johnson believes that, by conducting the strip search and confiscating her cross, Defendants discriminated against Johnson on the basis of her transgender identity because other inmates who did not identify as transgender were permitted to wear Christian pendant crosses to their loved ones' funerals. *Id.* ¶10. In support of this contention, Johnson has attached affidavits from two other inmates, Eddie Nelson Cruz and Christian Torres, who were permitted to wear pendant crosses to their family members' funerals. *Id.* Because

neither Cruz nor Torres identify as transgender, Johnson believes that Defendants discriminated against her on the basis of her transgender identity. *Id.* at ¶ 6.

Johnson is seeking both monetary and injunctive relief to remedy Defendants' alleged violations. *Id.* at ¶¶ 11–14.

### DISCUSSION

Section 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See* 42 U.S.C. § 1983; *Shakhnes v. Berlin*, 689 F.3d 244, 250 (2d Cir. 2012). "Section 1983 does not create substantive rights"—rather, it "provides a means to redress the deprivation of a federal right guaranteed elsewhere." *Diggs v. Town of Manchester*, 303 F. Supp. 2d 163, 182 (D. Conn. 2004). Accordingly, Johnson's allegations must be sufficient to state a claim for a constitutional violation.

To the extent Johnson seeks monetary damages against Defendants in their official capacities, her claims are barred by the Eleventh Amendment and will be dismissed. *See, e.g.*, *Will v. Michigan Dep't of State Pol.*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) ("the eleventh amendment immunity protects state officials sued for damages in their official capacity").

However, Johnson may seek to recover monetary damages against Defendants in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991). "[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of section 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under section 1983 solely by the 'official' nature of their acts." *Id.*

Furthermore, Johnson's claims for injunctive relief against Defendants in their official capacities may proceed, provided such claims are adequately pled. *See Will v. Michigan Dep't of State Pol.*, 491 U.S. 58, 71 (1989) (stating that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.") (internal citations and quotation marks omitted); *see also Feng Li v. Rabner*, 643 F. App'x 57, 57-59 (2d Cir. 2016) ("As to the individual defendants, generally, state officials are not immune under the Eleventh Amendment if the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.") (internal quotation marks omitted).

### A.     Fourteenth Amendment Equal Protection Claim

Johnson alleges that, by confiscating her cross, Defendants discriminated against Johnson on the basis of her transgender identity.

The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause requires that the government treat similarly situated people in a similar manner. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

To state a violation of the Equal Protection Clause, "a plaintiff must demonstrate that [s]he was treated differently than others similarly situated as a result of intentional or purposeful discrimination," and show that "the disparity in treatment cannot survive the appropriate level of scrutiny." *See Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005); *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 590–91 (S.D.N.Y. 2015). The Court must determine what level of scrutiny applies. Because transgender people "are a quasi-suspect class," the Court "must apply intermediate scrutiny to defendants' treatment of plaintiff." *Adkins v. City of New York*, 143 F.

Supp. 3d 134, 140 (S.D.N.Y. 2015) (citing *Windsor v. United States*, 699 F.3d 169, 181–85 (2d Cir. 2012)). To state a constitutional claim on that basis, plaintiff must adequately allege that the discriminatory treatment complained of was "not substantially related to an important government interest." *Id.*

When construed liberally, Johnson's complaint sufficiently alleges that Johnson was treated differently than other similarly situated inmates as a result of Defendants' intentional or purposeful discrimination. Johnson alleges that Defendants discriminated against her on the basis of her transgender identity because, while other inmates who did not identify as transgender were permitted to wear pendant crosses to their family members' funerals, Johnson was subjected to a strip search and asked to surrender her cross. Confronted by Johnson's questioning of their actions, Defendants failed to provide a legitimate security reason for confiscating Johnson's cross prior to her brother's funeral. Accordingly, Plaintiff's Equal Protection claim may proceed against all Defendants in their individual capacities.

    **B.**    **First Amendment Free Exercise Claim**

Johnson alleges that, by confiscating her cross, Defendants prevented her from freely expressing and practicing her religious beliefs.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 283 U.S. 342, 348 (1987); *see also Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause."). However, a prisoner's right to exercise her religion is not absolute and must be balanced against "the interests of prison

officials charged with complex duties arising from administration of the penal system." *See Ford*, 352 F.3d at 588 (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)).

To state a First Amendment free exercise claim, a plaintiff must allege facts showing that the defendants' conduct substantially burdened her sincerely held religious beliefs. *See Washington v. Gonyea*, 538 F. App'x 23, 26 (2d Cir. 2013) (quoting *Salahuddin*, 467 F.3d at 274-75); *Ford*, 352 F.3d at 588–91. A belief is substantially burdened where the defendants have put "substantial pressure" on the plaintiff to modify her behavior and to violate her beliefs. *See Forde v. Zickefoose*, 612 F. Supp. 2d 171, 177 (D. Conn. 2009) (citing *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)). In considering whether a plaintiff has made the required showing, the court does not evaluate the objective reasonableness of her belief but considers only whether the plaintiff "sincerely holds a particular belief and whether the belief is religious in nature." *Ford*, 352 F.3d at 590.

Courts have recognized that inmates may use religious objects in order to practice or express their religious beliefs. *See, e.g.*, *Goode v. Bruno,* No. 3:10-cv-1734 (SRU), 2013 WL 5448442, at *3, *6 (D. Conn. Sept. 30, 2013) (acknowledging that the plaintiff exercised and expressed his Wiccan beliefs by possessing certain objects and using them in sacred ceremonies).

Johnson's complaint, when liberally construed, sufficiently states a free exercise claim under the First Amendment. Johnson alleges that she is a devote Protestant who regularly attends religious services. Johnson also alleges that she intended to wear her pendant cross—a religious artifact and a symbol of her faith—to her brother's funeral in order to express and practice her religious beliefs. By confiscating the cross, Defendants substantially burdened Johnson's ability to practice her sincerely held religious beliefs at her brother's funeral.

7

Therefore, Johnson's First Amendment claim may proceed against all Defendants in their individual capacities.

### C. Fourth Amendment Claim

The Court also considers whether Johnson's allegations regarding the strip search, to which she was subjected prior to attending her brother's funeral, raise a claim under the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

Inmates "retain a limited right of bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). When evaluating a claim that an isolated search infringed on an inmate's right of bodily privacy, a court must consider four factors in determining whether the search was reasonable: "(1) the scope of the intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was conducted." *Id.* at 58 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

Strip searches of inmates are lawful where they are "reasonably related to legitimate security interests," a determination that is generally within "the province and professional expertise of corrections officials." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328 (2012) (citations omitted). Generally, strip searches conducted prior to and after a transport may be justified in the search for contraband. *See Smith v. City of New York*, No. 14 CIV. 5934 JCF, 2015 WL 3929621, at *3 (S.D.N.Y. June 17, 2015) (recognizing that searches conducted prior to transport away from the facility are "situations where the legitimate purpose of preventing the import or export of contraband is clear"); *see also Thompson v. City of New York*, No. 16 Civ. 824 (PKC), 2017 WL 1929552, at *2 (S.D.N.Y.

May 9, 2017) (detainee strip searches on the way to and from court appearances are not generally unconstitutional, because such searches are justified by preventing contraband from coming into and out of jails).

Although Johnson's allegations may imply that Defendants conducted a strip search in order to harass her as a transgender person, Johnson has failed to plead any facts showing that the strip search was intrusive, conducted in an unreasonable manner, or unwarranted under the circumstances. Because Johnson alleges that the strip search was conducted prior to her transport from the Garner facility to her brother's funeral, it appears that the search was reasonably related to a legitimate security interest. *See Florence*, 566 U.S. at 328; *Green*, 224 F. Supp. 3d at 166; *Smith*, 2015 WL 3929621, at *3. Nor does Johnson allege that the search was arbitrary because no other inmate had been subject to a strip search under similar circumstances.

Because Johnson has not alleged any facts suggesting that Defendants initiated the strip search solely to harass Johnson as a transgender person, or that the strip search was impermissibly intrusive or unrelated to a legitimate security interest, Johnson has failed to state a claim under the Fourth Amendment.

### D. Claims for Injunctive and Declaratory Relief

Johnson also asserts claims for declaratory and injunctive relief against all Defendants in their official capacities. Johnson requests a declaration that Defendants' conduct violated her constitutional rights and seeks preliminary and permanent injunctions enjoining Defendants from confiscating her cross, harassing her as a transgender person, and preventing Johnson from practicing her religious beliefs. *See* Doc. 1, at ¶¶ 11–12.

"[A] plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective injunctive relief from violations of federal law." *In re*

*Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (internal citations and quotation marks omitted).

To obtain preliminary injunctive relief, a plaintiff must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *See Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405–06 (2d Cir. 2011) (internal quotation marks omitted); *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

To state a claim for permanent injunctive relief, a plaintiff must plausibly allege that she will suffer irreparable harm should the injunction be denied and demonstrate actual success on the merits of her claim. *See Oginbene v. Parkes*, 671 F.3d 174, 182 (2d Cir. 2012). Irreparable harm requires an "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Daniels v. Murphy*, No. 3:11CV286 (SRU), 2013 WL 587005, at *3 (D. Conn. Feb. 12, 2012) (quoting *Forrest City Daly Housing, Inc. v. Town of North Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999) (internal quotation marks omitted)).

To obtain prospective injunctive relief, whether preliminary or permanent, a plaintiff "cannot rely on past injury . . . but must show a likelihood that . . . she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998); *see also Marcavage v. City of N.Y.*, 689 F.3d 98, 103 (2d Cir. 2012) (to obtain prospective relief, a plaintiff must show "a sufficient likelihood" that she will again be wronged in a similar way).

Here, although Johnson's complaint discusses Defendants' past violations, such as confiscating her cross, Johnson has not alleged that Defendants are likely to continue engaging

10

in conduct that would prevent Johnson from exercising her religious beliefs. Nor does Johnson offer any facts suggesting that Defendants continue to engage in discriminatory conduct against Johnson on the basis of her transgender identity. Because Johnson has not alleged an ongoing constitutional violation and has failed to plead facts showing that she is likely to be wronged again, the Court dismisses her claims for injunctive relief. *See Deshawn*, 156 F.3d 340, 344 (2d Cir. 1998); *Marcavage*, 689 F.3d at 103.

Furthermore, to the extent that Johnson seeks a declaration that her rights had been violated, this "notice relief" likewise "is not the type of remedy designed to prevent ongoing violations of federal law, the Eleventh Amendment limitation on the Article III power of federal courts prevents them from ordering it as an independent form of relief." *See Walker v. Nicholas*, No. 3:20-CV-118 (VAB), 2020 WL 3430264 (D. Conn. June 23, 2020), at *5 (citing and quoting *Green v. Mansour*, 474 U.S. 64, 71 (1985)).

For these reasons, Johnson's claims for declaratory and permanent injunctive relief will be dismissed without prejudice under 28 U.S.C. § 1915A(b).

## ORDER

The Court enters the following orders:

(1) The court permits Johnson's Equal Protection and Free Exercise claims to proceed against Defendants Correction Officers Padin and John Doe 1, and Defendant Captain John Doe 2 in their individual capacities for damages. All other claims, including Johnson's requests for declaratory and injunctive relief, are DISMISSED without prejudice subject to Johnson's filing of an amended complaint within thirty (30) days from the date of this order, on or before **September 15, 2020**, if she is able to allege facts to cure the deficiencies identified in this ruling.

(2) The clerk shall verify the current work addresses for Correction Officer Padin, Correction Officer John Doe 1, and Captain John Doe 2 (who are alleged to work at the Garner Correctional Institution) with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint and this order to them at their confirmed addresses within twenty-one (21) days of this Order, and report on the status of the waiver request on the thirty-fifth (35th) day after mailing.

If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk cannot effect service on a Doe or Roe defendant without that defendant's full name and current work address. Johnson is directed to obtain this information during discovery and to file a notice containing the information with the court. Once a Doe defendant has been identified, the court will order that he or she be served with a copy of the complaint. Failure to identify a Doe defendant will result in the dismissal of all claims against that defendant.

(4) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(5) Defendants shall file the response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If defendants choose to file an answer, defendants shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within six months (180 days) from the date of this Order. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Johnson changes her address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that she MUST notify the court. Failure to do so can result in the dismissal of the case. Johnson must give notice of a new address even if she is incarcerated. She should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Johnson has more than one pending case, she should indicate all of the case numbers in the notification of change of address. She should also notify the defendants or defense counsel of her new address.

(11) Johnson shall utilize the Prisoner Efiling Program when filing documents with the court. She is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

It is **SO ORDERED**.

Dated:      August 16, 2020
              New Haven, Connecticut

                                                    */s/ Charles S. Haight, Jr.*

                                               CHARLES S. HAIGHT, JR.

                                               Senior United States District Judge